May it please the Court. My name is Tracy Jones. I represent the petitioner Ms. Christine Beyer in this matter. In order for the appellant to succeed in convincing you that the manifest weight of the evidence shows that her condition of ill-being at C-56, C-67 was not caused by, aggravated, or accelerated by the incident of January 22, 2004, she points to two different things. First, what she calls an intervening event, her farm work or work on her husband's farm, and two, the opinion of Dr. Weiss. With regards to the farm work, this is simply a red herring thrown at you to confuse the original issue or the main issue in this case. Ms. Beyer testified that she had been doing farm work, throwing bales of hay, helping her husband out for years before this incident. She never had any problems in her cervical spine, never had symptoms, never needed medical treatment, despite that she had been doing this for years. After the injury, she continued to do it, but it didn't worsen her condition. What worsened her condition was getting hit in the face by a dodgeball at work on January 22, 2004. The appellant wants you to believe that this is an intervening event, this farm work, but they have no medical opinion to support it. And without a medical doctor opining that the farm work was an intervening event, they do not sustain their burden in showing it's an intervening event. Their own I.M.P. physician, Dr. Steven Weiss, failed to testify that he thought her condition was due to farm work. He didn't testify to that. He didn't put it in his report. The evidence at trial did not show that the farm work was an intervening event in any way. The second thing that the appellant points you to is Dr. Weiss' testimony. They believe that you should adopt the opinion of Dr. Weiss over Dr. Riordan, the I.M.P. physician, hired by Ms. Byer's attorneys at the time of trial, and over the opinion of Dr. Pearson, her treating physician. The first thing they say in their brief about why Weiss is more credible is he reviewed the whole file. But she conceded in oral arguments just now that Dr. Riordan reviewed the exact same information, the exact same scans, had all the information available to him that Dr. Weiss did, and Dr. Pearson, her treating physician, who had been treating her way back to 1990, had the exact same information as well. But she thinks that Dr. Weiss' opinion should be more credible than that of Dr. Riordan or Dr. Pearson. Ms. Jones, is it clear that the claimant had a pre-existing degenerative disc disease? That's not an issue, is it? No, it's not an issue. The x-rays that were done right after the injury, the MRI that was done in October, all showed that she had degenerative disc disease in her cervical spine. And you're saying, in summary, that the accident exacerbated or aggravated a pre-existing condition that should be compensable. Is that, in essence, what you're saying? Absolutely. In this case, it's very clear, prior to January 22, 2004, she had degenerative disc disease. It's clear from the x-rays that that existed. What's also clear from the evidence? She never had treatment for it, and she never had complaints. Cisco is the case that discusses this particular issue. The appellant, in their brief, attempted to distinguish Cisco. Attempted to show you that this case is not like Cisco. But the only thing they pointed to that's being different is in Cisco, the opinion of the treating physician was adopted over the opinion of the IME doctor. They did not point out to you that there was any factual difference between the injury and the pre-existing condition of the petitioner in that case versus the one in this case. Why? Because there is no difference. She had a pre-existing asymptomatic condition in her cervical spine. The incident of January 22, 2004, being hit in the head by the dodgeball, caused that pre-existing asymptomatic condition to become symptomatic and resulting in the need for medical treatment. Now, going back to one thing that they talked about with Dr. Weiss, they think Dr. Weiss is more credible because Dr. Weiss somehow had this magical knowledge that nobody else had. He testified that he was certain that she must have had symptoms in her cervical spine based on the findings he noted on the X-ray and the MRI. There's no evidence to support Dr. Weiss's speculation. Liability under the Illinois Workers' Compensation Act cannot be based on imagination, speculation, or conjecture. Yet, that's what they want you to do. They want you to rely on Dr. Weiss's opinion, which is based on speculation and speculation alone. Well, also, couldn't that evidence, though, be used to undermine the credibility of the testimony of your client, that she was asymptomatic? No, because there is no evidence that she had symptoms. Well, I mean, she's saying she had no symptoms. She said, she agreed that prior to January 22, 2004, she had symptoms in her lumbar spine, but she never had symptoms in her cervical spine prior to the date of event. That's the critical issue. Your lumbar spine is different from your cervical spine. Yeah, she had treatment and problems. The issue I'm going at is that Dr. Weiss's testimony could be used to make that argument that your client's just not credible, that I've been asymptomatic all these years. It could be used to make that argument, but I think that argument would be based purely on speculation. Unless there's any evidence in the record that she did, in fact, have symptoms in her cervical spine, to base an opinion or to change the Commission's decision would be based only on speculation. What about this sequence of an x-ray that doesn't show anything, but then the subsequent objective test after bucking bales at the farm does show something? Counsel indicated to you in response to your question to her that she believes the x-ray should have shown, if it did exist, the herniated disc that later was revealed on the MRI. Doctors use x-rays universally to initially examine someone's spine. X-rays do not show herniated discs. They may show decreased disc space, narrowing, curvature, fractures, things of those nature, but x-rays don't show herniated discs. That was later revealed on the MRI. It was reasonable for the doctor to initially do the x-ray, take her through conservative treatment field, do the MRI, after the MRI revealed disc pathology at C5-6 and C6-7, then to undergo the EMG. The EMG confirmed the distribution of pain, a radiculopathy from the C5-6 level. So the x-ray obviously is not going to show the herniated disc when she was initially, initially had it done on January 23, 2004. I think, although counsel may have thought that it should have revealed it, medical doctors will tell you that it didn't. That issue was not addressed by Dr. Weiss. They have no opinion from Dr. Weiss saying that if it did exist on January 23, it would have shown up in the x-ray. Dr. Riordan didn't testify that way. Dr. Pearson's records don't indicate that. All the evidence points to the contrary. I think in this matter, Your Honors, the appellant cannot show you that the manifest weight of the evidence mandates or compels a different outcome than that reached by the commission and the circuit court. I respectfully request that you affirm that decision in all respects. Thank you. Thank you, counsel. You may reply. Just to respond to a couple of things. First, defense, or rather, Petitioner's counsel states that, with respect to the intervening event, that no doctor will testify that the farmwork actually caused Ms. Byer's injury. I think that there's a lot of evidence in the record that points to the fact that, in fact, it would potentially cause this injury. First, immediately after the accident, Ms. Byer treated with Premier Chiropractor. She went there the day after the incident occurred, and she continued to go there for two months following the accident. When she left Premier Chiropractic, there are specific notes handwritten by the chiropractors at Premier Chiropractic that stated that Christine Byer was noncompliant with their instructions to stop performing farmwork. Next, we have Dr. Riordan, who testified that heavy physical labor on the farm is not a condition of ill-being. It is, in fact, a factor in developing a cervical condition. Mr. Dr. Riordan also stated that heavy farmwork is going to decrease any improvement or results that Christine Byer sees in her treatment for her condition of ill-being. Furthermore, Dr. Weiss states that heavy farmwork is going to affect one's ability to perform farmwork, one's ability to be able to recover from an injury. And furthermore, as I had stated before, I believe that Dr. Weiss's testimony that Ms. Byer suffered only a minor soft tissue strain in her neck and back is supported by the fact that she was, in fact, doing this farmwork a day or two after the accident. Next, I would like to address CISPRO. In CISPRO, the petitioner and the employer had two completely different doctors. In CISPRO, the petitioner had the employee's treating physician testify for them on their behalf at trial. In CISPRO, the employer had a hired gun testify for them at trial. If you read CISPRO, I believe that the court specifically states that given the petitioner's doctor's knowledge, comfort, experience with the petitioner, their testimony would be more credible and, therefore, the manifest weight of the evidence is in favor of the testimony of the petitioner's doctor and the employer wasn't able to meet its burden. I think that that is not at all what we have here. In this case, we have a petitioner who has the medical testimony of a hired medical expert. On the employer's side, we have the higher testimony of a medical expert. But as I stated before, I believe that the manifest weight of the evidence shows that Dr. Weiss's testimony is, in fact, more credible because it is completely supported by the objective test. Not to mention the question of clarifying CISPRO. You're saying CISPRO stands for the proposition that certain type of expert treating this position as a matter of law is entitled to more credibility than another type of witness? What are you saying on that issue? I'm saying that in CISPRO, the court specifically points out that the employer did not meet the burden of showing that the manifest weight of the evidence was in favor of the employer and they specifically state in CISPRO that the doctor that was testifying on behalf of the employee was more credible and had more knowledge because they were, in fact, the treating physician for the employee. Well, I think there's a doctrine of law that says that the commission might rely on, to a certain extent, the testimony of the treating physician perhaps versus another type, but I don't think it stands for the proposition that a matter of law that's always the case, does it? I don't think it's always the case, but I think that in this situation, that it, that it shouldn't, CISPRO should not be used as a mirror case because there are factors in this case which distinguish it from the fact pattern in CISPRO. Thank you. Your time. Thank you, counsel, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue.